Ludlum v. Buckingham.

*Decree unanimously reversed.*

| 39 | 563 |
| 46 | 378 |
| 39 | 563 |
| 48 | 133 |

JAMES LUDLUM, appellant,

*v.*

ALICE BUCKINGHAM and husband, respondents.

A firm owning, as partnership property, real estate, was dissolved by the death of one of the two partners. The settlement of the partnership affairs was proceeding in the court of chancery in a suit pending between the sur-

Ludlum *v.* Buckingham.

viving partner and the executrix of the deceased partner, who had, by his will, acquired his interest. Under such circumstances, the parties entered into a written contract for the sale of all the real estate to the executrix, who was to pay for it by procuring releases of some mortgages which encumbered it, and by also depositing in court $30,000, to be disposed of in the settlement. The executrix failed to perform her part of the contract, and the mortgages having been foreclosed, a sale under a decree of foreclosure divested the interest of the parties and rendered specific performance of the contract impossible. The surviving partner filed a supplemental bill by leave of court, praying that the losses sustained by the partnership estate by the breach of the contract, should be ascertained and decreed to be paid or accounted for by the executrix.—*Held,*

(1) Whether the relief asked is, under such circumstances, within the jurisdiction of a court of equity, not decided.

(2) If the court has jurisdiction, the relief should be granted under the same rules which are applicable to the granting of relief by way of specific performance, and if he who seeks relief was unable to perform the contract on his part, or his conduct in the transaction was wanting in fairness and equity, the relief should be denied.

(3) In this case the contract could not have been performed by the surviving partner, according to its terms, and his conduct respecting it was so inequitable as to justify the refusal of the relief he sought.

---

*Mr. T. N. McCarter,* for appellant.

*Mr. J. M. Buckingham* and *Mr. F. W. Stevens,* for respondents.

The opinion of the court was delivered by

MAGIE, J.

This appeal is from a decree dismissing a supplemental bill filed by James Ludlum against Alice and John M. Buckingham, in an original suit, in which the latter parties were complainants and Ludlum was defendant. The details of the litigation and the facts developed in the phase of it now before us, are so fully stated in the opinion of Vice-Chancellor Van Fleet (on whose advice the bill was dismissed) that they need not be repeated, except so far as may be necessary to explain the conclusions I have reached. The opinion appears in *8 Stew. Eq. 71.*

It is sufficient now to state the following facts: The supple-

Ludlum v. Buckingham.

mental bill was founded on a written contract between the parties for the purchase and sale of real estate, which was part of the partnership assets of the firm of James Horner & Co. The firm had been dissolved by Horner's death. Ludlum was surviving partner, and had an interest in the real estate. Mrs. Buckingham had an interest in it under the will of Horner. By the contract, the firm's interest in the real estate was to be sold. The contract price was to be paid by procuring releases of mortgages encumbering the same and depositing in the court of chancery $30,000, to be subject to the orders of that court in the settlement of the partnership affairs, which was the object of the original suit between the parties.

The bill disclosed the fact that, when it was filed, some of the mortgages had been foreclosed and the real estate in question had been sold, so that the interest of the parties had been divested and a specific performance rendered impossible. But on allegations that respondents had failed to perform the contract, the bill prayed a decree against them to the effect that they had broken the contract and owed to the partnership estate such sum as would make good the losses sustained by it by reason of their failure, which sum it asked should be ascertained and decreed to be paid or accounted for by respondents.

A prominent question presented by the pleadings and discussed by counsel, relates to the jurisdiction of a court of equity to give this relief. It was contended that the bill seeks damages, not as ancillary to other appropriate and possible equitable relief, but as substantive relief which might be attained at law. On the other hand, it is insisted that the circumstances show that complete relief could not be afforded at law and justify a resort to equity. It is unnecessary to determine this important question, because, on the merits of the case, the conclusion reached in the court below was correct.

In the first place, the contract sought to be enforced by Ludlum is one which, in my opinion, he was unable to perform on his part in a most material particular. It was for the sale and conveyance of real estate, and enumerated, among other things, the "water power and water rights" connected with the real

estate, designating all as those theretofore owned and enjoyed by James Horner & Co.

It is shown that the value of the property depends very largely on the water power. As enjoyed by the firm, the water power was derived from water stored in a reservoir, covering several hundred acres. Thirty-six of those acres so used by the firm were not owned by it. They were held under a lease from the owners, the heirs of Cornelius Schuyler, which terminated on June 1st, 1876, but permitted the firm to become the owners in fee, by paying a price therein specified. The use of those acres was essential to the existence of the water power. Without that use, it was practically valueless.

The contract was to be performed in July, 1875. At that time Ludlum could not give such title for the water power as this contract required. For the Schuyler land (which was the key to the whole) he could only give a term of years soon to expire, with a right to acquire a fee by paying for it.

It is urged, however, that respondents knew of the situation of the title to the water power, and that, under such circum-stances, the contract must be taken to stipulate for a conveyance of only such rights as the firm of James Horner & Co. had. But, notwithstanding some contradiction in the proofs, I am satisfied respondents were ignorant, when this contract was made, of the situation of the title in this respect.

But next, if the contract were capable of such a construction, I still think Ludlum ought not to be permitted to enforce it, as he seeks to do.

Relief by specific performance of contracts is granted by courts of equity in the exercise of a discretion founded on equitable principles. He who seeks to move this court to compel per-formance must appear with conduct free from fraud or inequity. The same doctrine must be applied to a case like this, where—performance being impossible—the aid of this court is sought to obtain damages or compensation, which may be considered a substituted performance.

At the time the contract was entered into, Ludlum was surviving partner, and also receiver, appointed by the court of

chancery in this litigation. The Schuyler lease was not recorded, and was, with the other papers of the firm, in his possession. If the relation between Ludlum and Mrs. Buckingham was that of trustee and *cestui que trust*, it is clear that the parties did not treat together with equal knowledge and equal terms, and no court would sustain a contract so obtained. Whether that relation existed or not, I think the circumstances were such that good faith required him to disclose by what precarious title the water power enjoyed by the firm was held. If it be said that he supposed respondents had knowledge of the situation, it may be replied that there is evidence that in 1873 he told one of respondents that the title to the water power had been "at loose ends;" that it took trouble and money to get it "straightened up," and that there was nothing then against it but some suits not connected with the Schuyler lands. Such a statement would justify respondents in believing, as testified to, that the Schuyler title had been acquired. In that view the contract was the result of a misunderstanding, and the minds of the parties did not meet therein.

The subsequent conduct of Ludlum was also such as, in my opinion, to disentitle him to the aid of a court of equity.

His claim is for damages, and is based on the ground that by reason of the failure of respondents to perform the contract, the real estate was sold under the mortgages, and brought no more than the amount remaining due after a large amount of the personal property of the firm had been applied thereon.

After the expiration of the Schuyler lease, it was renewed in the name of the mortgagee who was foreclosing. Subsequently, the mortgagee, received some payment on account, and, as Ludlum testifies, abandoned his lease. It was then, on January 1st, 1877, renewed in the name of Mrs. Ludlum. The evidence convinces me that this renewal was obtained with the knowledge and by the procurement of Ludlum.

Whether any duty devolved on Ludlum, under these circumstances, to obtain or hold the renewal for the benefit of the property, may be questioned; but I think it clear that he could not, in fairness, use the renewal he procured to depreciate the

value of the property, and to enhance the damages he now seeks to recover.

When the property was sold under the foreclosure, Ludlum announced that the renewed lease would be held adversely to the purchaser. The announcement, it is true, was made in response to a question, and he was bound to make it, if true. And it does not positively appear that intending purchasers were, in fact, deterred from offering to buy. But the circumstances proved justify the belief that Ludlum procured the lease with the intent to have it held adversely to intending purchasers. This course he must have known would deter bidders, and reduce the price offered. Whether this was done in collusion with Corning, the mortgagee, and with the design of aiding him in acquiring the property at a reduced price or not, is a question which need not be determined in this case. It is sufficient that his conduct tended directly to increase the damages which he now asks should be imposed on respondents.

The learned vice-chancellor concluded that Ludlum's conduct was inequitable in that he withheld from the partnership estate a very large sum of money which was due to it from him, and which, if paid, would have enabled respondents to perform this contract. I think it quite clear that, if Ludlum had done his duty to the partnership estate by paying in what he owed, either respondents would have been enabled to purchase under the contract, or the necessity of a forced sale of the personal and real property of the estate might have been obviated, and in that event probably no loss would have followed the failure of respondents to perform the contract.

For all these reasons I think that Ludlum is not entitled to the relief he asks, and that the decree dismissing his bill should be affirmed, with costs.

*Decree unanimously affirmed.*